UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GARPO MARINE SERVICES INC.

                    Plaintiff,

    *v.*

ISLAND ROMANCE (Official No. 551624),
*her engines, boilers, appurtenances,
tackle, etc., in rem*; and EL DORADO
CRUISE LLC and DHANESHWAR
RAMLOCHAN, *in personam*,

                    Defendants.

**REPORT &
RECOMMENDATION**
19-CV-6875-EK-SJB

**BULSARA, United States Magistrate Judge:**

Plaintiff Garpo Marine Services Inc. ("Garpo Marine") commenced this maritime

action *in rem* against the commercial passenger vessel the *Island Romance* and *in*

*personam* against El Dorado Cruise LLC ("El Dorado Cruise"), the vessel owner, and

Dhaneshwar Ramlochan ("Ramlochan"), the manager of El Dorado Cruise, on

December 6, 2019.[1]  No claimant or Defendant appeared, and Garpo Marine moved for a

default judgment on March 22, 2021.[2]  Garpo Marine revised its default judgment

application and now seeks to dismiss Ramlochan and obtain judgment for a breach of

maritime contract claim against El Dorado Cruise only and foreclosure of a maritime

---

[1] Verified Compl. with Prayer for Process of Maritime Arrest dated Dec. 6, 2019
("Compl."), Dkt. No. 1, ¶¶ 1, 5–10, 16, 18.

[2] Notice of Mot. for Entry of Default J. dated Mar. 22, 2021 ("Mot."), Dkt. No. 28.

lien on the *Island Romance* via judicial sale.[3]  For the reasons outlined below, the Court respectfully recommends the motion be granted.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The *Island Romance* is a commercial passenger vessel owned by Defendant El Dorado Cruise and currently located on Staten Island.  (Compl. ¶¶ 5–8).  El Dorado Cruise is a limited liability company organized in New York, with a service address of 2144 Ellis Avenue, Bronx, New York.  (*Id*. ¶ 7).  Ramlochan is an individual residing in the Bronx, New York, who "owned, operated, managed and/or served as agent for" El Dorado Cruise.  (*Id*. ¶¶ 7, 9–10).  Garpo Marine is a New York corporation that "provid[es] marine maintenance, repair and storage services to vessels" and is located at 113 Ellis Street, Staten Island, New York.  (*Id*. ¶¶ 3–4).  Garpo Marine alleges that El Dorado or Ramlochan delivered the *Island Romance* to its facility on Staten Island for maintenance, repairs, and storage in December 2018; that Garpo Marine performed these services; and that it was never paid for those services.  (*Id*. ¶¶ 12–14).  Garpo Marine contends that their failure to pay breaches a maritime contract and creates an enforceable maritime lien on the *Island Romance*.  (*Id*. ¶¶ 16, 18–20).

On December 6, 2019, Garpo Marine commenced this action by filing via verified Complaint.  (*Id*.).  Garpo Marine describes the *Island Romance* as "a commercial passenger vessel documented under the laws of the United States and bearing Official Number 551624."  (*Id*. ¶ 5).  At the time, the vessel was located on Staten Island, New York, that is, within the Eastern District of New York.  (*Id*. ¶ 6).  The Honorable

---

[3] Suppl. Mem. of Law dated June 18, 2021 ("Suppl. Mem."), Dkt. No. 34; Order of Default J. Against Def. El Dorado and the Def. Vessel, Dismissal Against Def. Ramlochan, and Order Directing Sale of Vessel ("Proposed Default J."), Dkt. No. 34.

LaShann DeArcy Hall[4] ordered the Clerk of Court to issue a warrant for the arrest of the *Island Romance* on December 17, 2019. (Order Directing Clerk to Issue Warrant of Arrest dated Dec. 17, 2019 ("Arrest Order"), Dkt. No. 10). Garpo Marine was appointed the custodian of the *Island Romance* on January 9, 2020. (Order Directing the Appointment of Substitute Custodian dated Jan. 9, 2020 ("Order Appointing Custodian"), Dkt. No. 13). The warrant was served by the U.S. Marshals Service on the *Island Romance* at Garpo Marine's facility on Staten Island on February 26, 2020. (Process Receipt and Return dated Feb. 26, 2020 ("*Island Romance* Executed Summons"), Dkt. No. 19).

El Dorado Cruise was served via the New York Secretary of State on February 25, 2020. (Aff. of Service dated Mar. 2, 2020 ("El Dorado Cruise Executed Summons"), Dkt. No. 22). Ramlochan was personally served at 1610 Taylor Avenue, Apartment B, Bronx, New York on July 22, 2020. (Aff. of Service dated July 22, 2020 ("Ramlochan Executed Summons"), Dkt. No. 23). Garpo Marine has indicated that no other person holds an ownership interest in or lien on the *Island Romance*. (Aff. Confirming Completion of Notification Requirements Regarding Arrest and Sale of Vessel, and in Supp. of Order Directing Interlocutory Sale of Vessel Lien Free and Default dated Dec. 2, 2020 ("Interlocutory Sale Req."), Dkt. No. 25 ¶¶ 7–9).

Further, on March 6, 2020, Garpo Marine published a notice in *Newsday*, which was circulated in Queens, Nassau, and Suffolk Counties and stated:

---

[4] The case was reassigned to Judge Eric R. Komitee on March 2, 2020. (Order dated Mar. 2, 2020).

Legal Notice # 21571215

NOTICE OF IN REM ARREST AND SEIZURE OF VESSEL, AND REQUIREMENT TO FILE CLAIMS.

IN THE STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

In Rem Admiralty and Maritime Matter 19-cv-016875-LDH-SJB

Garpo Marine Services Inc. v. Island Romance her engines, boiler, appurtenances, tackle, etc., in rem et al.

PLEASE TAKE NOTICE that Deputy United States Marshal, John Ferrante of the Eastern District of New York, has, on February 26, 2020 arrested the vessel ISLAND ROMANCE (Official Number 551624), her engines boiler, appurtenances, tackle, etc., in the above admiralty and maritime case for foreclosure on a maritime lien in the amount of $102,413.27 for unpaid necessaries, including maintenance, repairs and storage services and enforcement of Garpo Marine Services' lien, together with further interest, costs and attorneys' fees incurred in connection with the prosecution of this action. Any person who has not been previously served with process and who is entitled to possession or who claims an interest in the vessel ISLAND ROMANCE and her engines, boiler, appurtenances, tackle, etc. must file their claim(s) with the Clerk of the Eastern District of New York within fourteen (14) days after notice or first publication (whichever is earlier) or within such additional time as may be allowed by the Court and must serve their answers within twenty-one (21) days after the filing of their claims; otherwise, default will be noted and condemnation ordered.

Brooklyn, New York

March 2, 2020.

Peter Gutowski

Yaakov Adler

Freehill Hogan & Mahar LLP

80 Pine Street, 25th Floor, New York, NY 10005

212-425-1900

gutowski@freehill.com / adler@freehill.com

Attorneys for Plaintiff Garpo Marine Services Inc.

(Newsday Aff. of Publication dated Mar. 12, 2020 ("*Newsday* Aff."), attached as Ex. 1 to

Interlocutory Sale Req., Dkt. No. 25). No claimant has appeared; and neither El Dorado

Cruise, Ramlochan, nor the *Island Romance*[5] responded to the Complaint or otherwise entered an appearance in the case.[6]

Garpo Marine requested, (Req. for Certificate of Default dated Jan. 19, 2021, Dkt. No. 26), and the Clerk of Court entered, defaults against El Dorado Cruise, Ramlochan, and the *Island Romance.* (Certificate of Default dated Jan. 25, 2021 ("Certificate of Default"), Dkt. No. 27). On March 22, 2021, Garpo Marine moved for a default judgment, seeking $242,391.68 in contract damages from El Dorado Cruise and Ramlochan *in personam* and renewing its request for an interlocutory sale of the *Island Romance.* (Mot.; Mem. of Law in Supp. of Entry of Default J. dated Mar. 22, 2021 ("Mem."), Dkt. No. 32; Default J. attached to Mem., Dkt. No. 32). The motion was sent by certified mail to El Dorado Cruise at 2144 Ellis Avenue, Bronx, New York and to Ramlochan at his last known residential address.[7] The motion was referred by the

_____

[5] "Curiously, maritime cases and practitioners refer to the vessel answering the complaint. . . . The usage, of course, is shorthand for, as one court has expressed it, the filing [of] a claim by an owner by which he 'demands *restitution* of the vessel and *the right to defend* it,' giving him the 'right to file an answer.'" *JP Morgan Chase Bank, N.A. v. M/Y Fortuna*, No. 11-CV-2514, 2013 WL 1148920, at *2 n.1 (E.D.N.Y. Feb. 12, 2013) (quoting *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1110 (5th Cir. 1985)), *report and recommendation adopted*, 2013 WL 1195420 (Mar. 20, 2013).

[6] On December 3, 2020, Garpo Marine sought an interlocutory sale of the *Island Romance.* (Interlocutory Sale Req.). The request was denied for failure to satisfy the requirements of Supplemental Admiralty Rule E(9), and the Court directed Garpo Marine to seek certificates of default and move for a default judgment. (Order dated Dec. 17, 2020).

[7] The mailing to El Dorado Cruise was returned to sender; the return notation indicated that El Dorado Cruise was no longer at the address. (Certificate of Service dated June 18, 2021, Dkt. No. 33); *see* Local Civil Rule 55.2(c) ("If the mailing is returned, a supplemental affidavit shall be filed with the Court setting forth that fact, together with the reason provided for return, if any.").

Honorable Eric R. Komitee to the undersigned on March 23, 2021. (Order Referring Mot. dated Mar. 23, 2021).

On June 4, 2021, this Court requested clarification on whether Garpo Marine was waiving its claim for enforcement of a maritime lien against the *Island Romance*. (Order dated June 4, 2021). In response, Garpo Marine revised its application to include a request to enforce the maritime lien against the *Island Romance* via final judicial sale, rather than interlocutory sale, and to dismiss Ramlochan from the case with prejudice. (Suppl. Mem. at 6; Proposed Default J.). The submission indicated Ramlochan's consent to the relief sought. (Decl. of Dhaneshwar Ramlochan dated June 15, 2021 ("Ramlochan Decl."), Dkt. No. 34). This revised submission was mailed to El Dorado Cruise at its last known business address and Ramlochan at his last known residential address. (Certificate of Service dated June 23, 2021 ("Suppl. Default J. Service"), Dkt. No. 35).

On July 29, 2021, this Court directed Garpo Marine to provide additional support for its motion for default judgment. (Order dated July 29, 2021). Garpo Marine filed supplementary submissions on August 13, 2021. (Suppl. Mem. of Law dated Aug. 13, 2021 ("Second Suppl. Mem."), Dkt. No. 38; Decl. of John Garner dated Aug. 12, 2021 ("Garner Decl."), Dkt. No. 39).

DISCUSSION

## I.    Dismissal of Defendant Ramlochan

Pursuant to its settlement with Ramlochan, Garpo Marine seeks to dismiss him from this case with prejudice. (Proposed Default J.; *accord* Suppl. Mem.). A plaintiff is empowered to voluntarily dismiss any party from an action before that party "serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A).

Because Ramlochan has not appeared to either answer or move for summary judgment, the Court respectfully recommends Garpo Marine's request to voluntarily dismiss him with prejudice from this action be granted. The Clerk of Court is also directed to vacate the default entered against him. (Certificate of Default dated Jan. 25, 2021, Dkt. No. 27).

II.    Entry of Default Judgment

The Court next turns to entry of a default judgment against El Dorado Cruise and the *Island Romance* (together, "Defendants"). "Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment." *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id.* r. 55(b)(2). The Clerk entered a default against the *Island Romance* and El Dorado Cruise on January 25, 2021. (Certificate of Default).

The next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a

meritorious defense is presented." *Id.*; *see also, e.g.*, *Brooklyn Navy Yard Dev. Corp. v. Harbor Diesel Fuel Servs., Inc.*, No. 10-CV-5715, 2014 WL 4364628, at *2–3 (E.D.N.Y. Aug. 1, 2014), *report and recommendation adopted*, 2014 WL 4385413 (Sept. 3, 2014).

First, El Dorado Cruise's and the *Island Romance*'s failure to respond to the Complaint demonstrates their default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding defendants' non-appearance and failure to respond "indicate[d] willful conduct" and granting plaintiff's default judgment against them).

They had sufficient notice of the present litigation. El Dorado Cruise was served via the New York Secretary of State, (El Dorado Cruise Executed Summons), and a member of the U.S. Marshals Service affixed a copy of the summons and arrest warrant to the *Island Romance*. (*Island Romance* Executed Summons). The motion for default judgment, supporting papers, and supplemental submissions were also served via certified mail to El Dorado Cruise's last known business address in accordance with Local Civil Rule 55.2(c). (Default J. Service; Suppl. Default J. Service).

The *Island Romance* was also properly noticed as required by Local Admiralty Rule C.3. *See M/V Fortuna*, 2013 WL 1148920, at *5 ("Plaintiff is required to comply with procedural safeguards that ensure notice of the sale to anyone who may have an interest [in] the vessel."). A notice was published in *Newsday* on March 6, 2020. (*Newsday* Aff.). The notice "state[d] that all interested persons should file claims and answers within the times so fixed otherwise default will be noted and condemnation ordered," and it included

> (1) the fact and date of the arrest, (2) the caption of the case, (3) the nature of the action, (4) the amount demanded, (5) the name of the marshal, (6) the name, address, and telephone number of the attorney for the plaintiff,

and (7) a statement that claimants must file their claims with the clerk of this court within fourteen (14) days after notice or first publication (whichever is earlier) or within such additional time as may be allowed by the court and must serve their answers within twenty one (21) days after the filing of their claims.

Loc. Adm. R. C.2(a); *id.* r. C.3(a)(1) (mandating notice by publication in accordance with Local Admiralty Rule C.2 as a prerequisite for any motion for default judgment in *in rem* actions).

Garpo Marine identified Ramlochan and El Dorado Cruise as the only persons or entities holding an ownership or other interest in the *Island Romance*, and it has provided notice of the action and arrest of the ship to both in accordance with Local Admiralty Rule C.3(a)(3), that is, by mail to their last known addresses. (Default J. Service; Suppl. Default J. Service); *see* Loc. Adm. R. C.3(a)(3) (mandating notice pursuant to Federal Civil Rule 5(b) "upon every other person who has not appeared in the action and is known to have an interest in the property"); Fed. R. Civ. P. 5(b)(2)(C) (authorizing service by mail to a person's last known address).[8]

---

[8] Local Admiralty Rule C.3 requires notice be provided to (1) the custodian of the *Island Romance*; (2) "every other person who has not appeared in the action and is known to have an interest in the property"; (3) for vessels documented under U.S. law, all other persons identified by the U.S. Coast Guard "as holding an ownership interest in or as holding a lien in or as having filed a notice of claim of lien with respect to the vessel"; (4) for numbered vessels, all "persons named in the records of the issuing authority"; and (5) if there exists a government registry of recorded interests in the vessel, to all other persons with recorded interests named in the such registries. Loc. Adm. R. C.3(a)(3), (b)(1), (3). Here, Garpo Marine itself is the custodian of the *Island Romance* so additional notice is not required. The Court is also satisfied, upon review of the abstract procured from the U.S. Coast Guard, (General Index or Abstract of Title dated Nov. 22, 2019, attached as Ex. 2 to Interlocutory Sale Req., Dkt. No. 25), and the declaration of Garpo Marine's counsel, (Decl. of Peter J. Gutowski dated Mar. 22, 2021, Dkt. No. 29, ¶¶ 12, 16–17), that Garpo Marine has provided notice to the only persons with ownership or other interests in the *Island Romance* in accordance with these Local Admiralty Rules.

Notwithstanding this notice and service, El Dorado Cruise and the *Island Romance* did not respond to the Complaint and have not in any way attempted to defend this action.  (Plaintiff subsequently indicated that he is not pursuing claims against Ramlochan, and there is therefore no basis to maintain the default against him.)

As to the second factor, Garpo Marine would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, [it] would be unable to recover for the claims adequately set forth in the Complaint."  *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension & Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644, 2013 WL 4852312, at *7 (E.D.N.Y. Sept. 10, 2013) (adopting report and recommendation).

Third, the Court cannot conclude there is any meritorious defense to Garpo Marine's allegations because no party has appeared to present a defense to the Complaint and no claimant has appeared to assert a claim in the *Island Romance*.  *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

All three factors weigh in favor of the entry of default judgment.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

III.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc.*

*v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen.*

*Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016),

*report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a

legitimate cause of action."  10A Charles Alan Wright & Arthur R. Miller et al., *Federal*

*Practice and Procedure* § 2688.1 (4th ed. 2021) ("Once the default is established,

defendant has no further standing to contest the factual allegations of plaintiff's claim

for relief.  Even after default, however, it remains for the court to consider whether the

unchallenged facts constitute a legitimate cause of action, since a party in default does

not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270

(E.D.N.Y. 2010) (adopting report and recommendation).

Garpo Marine asserts two claims: it seeks damages for breach of a maritime

contract from El Dorado Cruise *in personam*, and it seeks to foreclose on a maritime

lien against the *Island Romance in rem*.  (Compl. ¶¶ 11–20; *accord* Suppl. Mem.).  Each

is addressed in turn below.

A.     Breach of Maritime Contract

Federal jurisdiction "extend[s] . . . to all Cases of admiralty and maritime

Jurisdiction."  U.S. Const. art. III, § 2, cl. 1.  This grant of jurisdiction empowers "federal

courts sitting in admiralty to proceed 'in the manner of a common law court.'"  *Dutra*

*Grp. v. Batterton*, 139 S. Ct. 2275, 2278 (2019) (quoting *Exxon Shipping Co. v. Baker*,

554 U.S. 471, 489–90 (2008)).  As a result, "where Congress has not prescribed specific

rules, federal courts must develop the 'amalgam of traditional common-law rules,

modifications of those rules, and newly created rules' that forms the general maritime

law." *Id.* (quoting *E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864–65 (1986)).

Garpo Marine alleges that it entered into a contract with El Dorado Cruise and Ramlochan to provide hauling, storage, maintenance, and repair services to the *Island Romance.* (Garner Decl. ¶ 7; *see also* Decl. of Eleanor Roma dated Mar. 22, 2021 ("Roma Decl."), Dkt. No. 30, ¶¶ 4, 6; Ramlochan Decl. ¶ 4).[9] Such a contract is considered a "maritime" contract and is governed by federal maritime law. 1 Benedict on Admiralty § 187 (2021) ("After a ship has been built and is ready to enter upon her service, contracts to repair or rebuild her are maritime."); *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99 (1922) ("It is not always easy to determine what constitutes repairs as opposed to original construction. A contract for the former is maritime; if for the latter, it is not."). "Federal maritime law requires a court to determine the scope, validity, and the consequences of breaching a maritime contract by using state law." *Bay Fireworks, Inc. v. Frenkel & Co.*, 359 F. Supp. 2d 257, 265 (E.D.N.Y. 2005) (citing *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998)); *see, e.g.*, *Gilfillan v. Cheely*, No. 18-CV-339, 2018 WL 6072459, at *3–4 (E.D. Va. Oct. 18, 2018) (applying Virginia law to a maritime contract for vessel repairs), *report and recommendation adopted*, 2018 WL 6072002 (Nov. 20, 2018).

In determining which state law applies, the Court looks to maritime choice-of-law rules. *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 7 F.3d 1077, 1080 (2d Cir.

---

[9] In its initial submissions, Garpo Marine alleged it entered into a maritime contract with Ramlochan "or" El Dorado Cruise. (Compl. ¶ 18; *accord* Roma Decl. ¶ 4 (stating that "Ramlochan / El Dorado approached [Garpo Marine]" to enter into a maritime contract)). In its second supplemental submission, Garpo Marine submitted a declaration by Garpo Marine's manager explaining the maritime contract is with both Ramlochan personally and El Dorado Cruise. (Garner Decl. ¶¶ 1, 7).

1993) ("Federal maritime law, including federal maritime choice-of-law rules, applies to maritime contracts."); *Bay Fireworks*, 359 F. Supp. 2d at 265.  And under those rules, the Court considers for tort claims, "(1) the place of the wrongful act, (2) the law of the ship's flag, (3) the domicile of the injured party, (4) the domicile of the shipowner, (5) the place of contract, (6) the inaccessibility of the foreign forum, and (7) the law of the forum." *Sundance Cruises*, 7 F.3d at 1082 (citing *Lauritzen v. Larsen*, 345 U.S. 571, 583-92 (1953)).  A modified version of these factors applies to maritime contract actions.  "[T]his choice-of-law analysis should include an assessment of the following contacts: (1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Advani Enters.*, 140 F.3d at 162.

All factors here weigh in favor of the application of New York law: the contract was formed and performed in New York, the *Island Romance* is in New York, and its owner is organized in New York.  And there is no contracted choice of law provision electing another state's law.  As a result, the Court applies New York contract law to this claim.

Under New York law, the elements of breach of contract are "existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Fernandez v. Abatayo*, 172 A.D.3d 821, 822 (2d Dep't 2019) (quoting *Legum v. Russo*, 133 A.D.3d 638, 639 (2d Dep't 2015)); *accord Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015).  Garpo Marine has sufficiently demonstrated all four elements.

First, to establish the existence of a contract under New York law, a plaintiff must demonstrate "offer, acceptance, consideration, mutual assent, and intent to be bound." *Brooklyn Navy Yard Dev. Corp.*, 2014 WL 4364628, at *4 (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).  Garpo Marine's submissions— declarations by its own employee and by Ramlochan—confirm the existence of the contract between Garpo Marine and El Dorado Cruise and their mutual assent and intent to be bound.  (Garner Decl. ¶ 7; *see also* Roma Decl. ¶¶ 4–6; Ramlochan Decl. ¶ 4).

Second, Garpo Marine has demonstrated its performance pursuant to the contract—that is, Garpo Marine "provided general necessaries to the [*Island Romance*], . . . includ[ing], among other things, hauling, blocking, electrical service, storage, etc., to the [*Island Romance*], . . . in a good and workmanlike manner."  (Roma Decl. ¶ 6).  It has also demonstrated breach: El Dorado Cruise has failed to pay for these services.  (*Id.* ¶ 8).  And Garpo Marine has itemized the damages flowing from the breach, totaling $242,391.68 as of March 2021.  (*Id.* ¶ 10).  As a result, the Court finds El Dorado Cruise liable for breach of this maritime contract.  *See, e.g.*, *Brooklyn Navy Yard Dev. Corp.*, 2014 WL 4364628, at *4.

B.     Enforcement of Maritime Lien

Garpo also seeks to enforce a maritime lien for necessaries *in rem* against the *Island Romance*.  "An action in rem may be brought . . . [t]o enforce any maritime lien[.]"  Suppl. Adm. R. C(1)(a).  "The granting of liens for necessaries provided to a vessel is governed by statute."  2 Benedict on Admiralty, *supra*, § 35.  Specifically, the Commercial Instruments and Maritime Liens Act (the "Act") provides:

a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—

> (1) has a maritime lien on the vessel;
> (2) may bring a civil action in rem to enforce the lien; and
> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342.  "[T]o establish a maritime lien for necessaries, a supplier must show (1) that the goods or services were provided to the vessel; (2) that the goods or services were 'necessaries'; (3) that the charges are reasonable in amount; and (4) that they were ordered by someone with the appropriate authority."  *KKMI Sausalito, LLC v. The Vessel "Self Inflicted,"* 428 F. Supp. 3d 200, 207 (N.D. Cal. 2019).  "Necessaries" include "repairs, supplies, towage, and the use of a dry dock or marine railway[.]"  46 U.S.C. § 31301(4).  These categories are "interpreted broadly to include any goods and services 'reasonably needed' in a ship's business for a vessel's continued operation."  *Barwil ASCA v. M/V Sava*, 44 F. Supp. 2d 484, 487 (E.D.N.Y. 1999) (quoting *P.T. Perusahaan Pelayaran Samudera Trikora Lloyd v. T.S. SALZACHTAL*, 373 F. Supp. 267, 275 (E.D.N.Y. 1974)).

Rule C(2) of the Supplementary Admiralty Rules sets forth additional procedural requirements for *in rem* actions brought to enforce a maritime lien.  That is, "the complaint must: (a) be verified; (b) describe with reasonable particularity the property that is the subject of the action; and (c) state that the property is within the district or will be within the district while the action is pending."  Suppl. Adm. R. C(2).  Supplementary Admiralty Rule E(2) separately requires that for claims brought under Rule C(2), the plaintiff must "state the circumstances from which the claim arises with such particularity that the claimant will be able to commence an investigation of the facts and frame a responsive pleading without a motion for a more definite statement."

*United States v. U.S. Currency in the Amount of Twenty-Four Thousand One Hundred Seventy Dollars ($24,170.00)*, No. 91-CV-529, 1991 WL 87332, at \*1 (E.D.N.Y. May 20, 1991).

As an initial matter, Garpo Marine has also satisfied the procedural requirements of the Supplementary Admiralty Rules. The Complaint was verified by Garpo Marine's attorney, Peter J. Gutowski. (Compl. at 7). The Complaint provides the name, location, and number of the *Island Romance*, as well as its owner, satisfying the particularity requirement. *Cf.* 8 Benedict on Admiralty, *supra*, § 23.08(5) ("Rule C(2) calls for the complaint to describe the property with reasonable particularity. If the property is a blue-water ship having a name and home port, stating those should suffice. Inland waters craft are often identified by name, official number, length, breadth, draft, and tonnage. If the property is a fiberglass cruiser laid up for the winter in a boatyard, more details are needed in order to provide 'reasonable particularity' for the U.S. marshal to sort out the *Firefly* from two dozen similar ships."); *see also, e.g.*, *Shelter Cove Marina, Ltd. v. M/Y Isabella*, No. 19-CV-1106, 2019 WL 2524992, at \*2 (S.D. Cal. June 18, 2019) ("Shelter Cove's Verified Complaint reasonably describes the vessel—an 81.6-foot, 1952 motor yacht of steel construction which is documented with the United States Coast Guard under Official Number 1192004[.]"); *Sterling Sav. Bank v. Vessel Imagine*, No. 13-CV-2499, 2013 WL 3354416, at \*2 (N.D. Cal. June 27, 2013) (adopting report and recommendation) (finding allegation "that Defendant Imagine, Hull ID 1YD70139A910, at 2010 Destination 70' Yacht, Official Number 1222594 . . . is a custom houseboat located at Cruiser Haven Marina in Discovery Bay, California" to be sufficient to issue warrant for arrest). And Garpo Marine has demonstrated the *Island Romance* was located on Staten Island, that is, within the Eastern District of New York. (Compl. ¶ 6).

The Court also concludes that Garpo Marine possesses a maritime lien in the *Island Romance* and is entitled to enforce it. Garpo Marine provided hauling, electrical maintenance, repairs, and storage to the *Island Romance*. (Roma Decl. ¶ 6). These services qualify as "necessaries." *See, e.g.*, *Seaborn Marina, Inc. v. M/V Priorities*, No. 11-CV-1591, 2017 U.S. Dist. LEXIS 24988, at *7 (E.D.N.Y. Feb. 21, 2017) ("Plaintiff provided necessaries to the Vessel by allowing it to be docked at its marina."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 43310 (Mar. 24, 2017); *The Vessel "Self Inflicted,"* 428 F. Supp. 3d at 207 (finding "repairs and hull maintenance" to be necessaries). Ramlochan not only agrees the amounts are due, but he also had paid identical rates twice before. (Ramlochan Decl. ¶ 4; Garner Decl. ¶ 23). The Garner Declaration indicates that the rates Garpo Marine seeks for the necessaries performed are commensurate with comparable facilities on Staten Island. (Garner Decl. ¶¶ 17–26). Based on these facts, the Court concludes the charges are reasonable. And the services were ordered by Ramlochan, a person with appropriate authority to incur the expenditures. (Roma Decl. ¶ 5; Ramlochan Decl. ¶ 4).

As a result, the Court concludes Garpo Marine possesses and is entitled to enforce a maritime lien *in rem* on the *Island Romance*.

IV.    <u>Damages and Other Relief</u>

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v.*

*Interstate Motor Carrier, Inc.*, No 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

Garpo Marine seeks to sell the *Island Romance* via judicial sale and also to obtain a judgment of $242,391.68 *in personam* against El Dorado Cruise.[10] For the reasons below, the Court recommends both requests be granted.

A.   Judicial Sale

When a creditor holds such a lien, "the vessel itself is viewed as the obligor, regardless of whether the vessel's owner is also obligated." *Addax Energy SA v. M/V Yasa H. Mulla*, 987 F.3d 80, 86 (4th Cir. 2021). As such, a vessel may be "sold by order of a district court in a civil action in rem brought to enforce . . . a maritime lien." 46 U.S.C. § 31326(a); *see, e.g.*, *M/Y Fortuna*, 2013 WL 1148920, at *7. A judicial sale will extinguish the *in rem* liability of the *Island Romance*. *Bank of the West v. Sailing Yacht*

---

[10] Garpo Marine does not seek attorney's fees, prejudgment interest, or post-judgment interest; instead, it "limit[s] [its] recovery to the proceeds from the sale of the [*Island Romance*]." (Suppl. Mem. at 4).

*Serendipity*, 101 F. Supp.3d 238, 254–55 (E.D.N.Y. 2015).  The Court respectfully

recommends that the sale of the *Island Romance* be ordered consistent with

Supplementary Admiralty Rule E(9)(b) and Local Admiralty Rule C.2(b) in order to

satisfy Garpo Marine's maritime lien against the *Island Romance* for $242,391.68.[11]

   B.   Damages *In Personam* Against El Dorado Cruise

   "The holder of a maritime lien generally may pursue an *in rem* action to enforce

the lien against the vessel, as well as seek damages against the party responsible for

breach of contract."  *Addax Energy SA*, 987 F.3d at 86.  However, while "a provider of

necessaries may pursue both *in personam* and *in rem* remedies, the provider may not

'double-recover' on its debt."  *Id.*

   Garpo Marine has established that, if El Dorado Cruise had not breached the

maritime contract, it would have been paid for the necessaries it provided to the *Island

Romance*.  Garpo Marine has also established the amounts with the requisite certainty

by providing invoices itemizing the amounts it is owed.  *Billybey Marina Servs., LLC v.

Affairs Afloat, Inc.*, No. 14-CV-6722, 2016 WL 1266608, at *4 (E.D.N.Y. Mar. 11, 2016)

(recommending breach of maritime contract damages on default based on invoices

provided by plaintiff), *report and recommendation adopted*, 2016 WL 1271479 (Mar.

30, 2016); *see also Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365, 2013 WL 2444151,

at *3 (E.D.N.Y. June 5, 2013) (adopting report and recommendation) (awarding

---

[11] Garpo Marine contends that it possesses a legal right to a lien for *custodia legis*
expenses, yet it does not seek those expenses.  Second Suppl. Memo. at 4–5.  It instead
allows that "the charges incurred by the Vessel/El Dorado both pre- and post-arrest
were essentially the same" and concedes that it "is willing to simply seek the combined
amount as of March 2021 to avoid any further need to recalculate the claim or delay
finalization."  *Id.* at 5.  The Court's recommendation is consistent with this request.

damages evidenced by bills of lading and corresponding invoices in breach-of-maritime-contract action).

Thus, the Court orders that the judicial sale of the *Island Romance* be effectuated, and that the proceeds be provided to Garpo Marine. If the sale does not satisfy the $242,391.68 owed, then Garpo Marine is entitled to a final judgment against El Dorado Cruise for any deficiency.

<u>CONCLUSION</u>

For the reasons stated, the Court respectfully recommends that Ramlochan be dismissed from this action with prejudice and the default against him be vacated. Furthermore, the Court recommends Garpo Marine's motion for a default judgment be granted as follows: (1) judgment be entered against the *Island Romance in rem* in the amount of $242,391.68 and that the sale of the *Island Romance* be ordered consistent with Supplementary Admiralty Rule E(9)(b) and Local Admiralty Rule C.2(b); and (2) that following the sale, final judgment be entered against El Dorado Cruise for any deficiency.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Garpo Marine is directed to serve a copy of this Report and Recommendation on

El Dorado Cruise and the *Island Romance* and file proof of service on the record by

October 7, 2021.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York
September 30, 2021